IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**TAMMY BISHOP**                                                                                   **PLAINTIFF**

**V.**                                               **CIVIL ACTION NO. 3:19CV9 CWR-LRA**

**ANDREW SAUL,**
**COMMISSIONER OF SOCIAL SECURITY**                           **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff appeals the final decision denying her application for a period of disability and disability insurance benefits ("DIB"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that this cause be affirmed.

In 2015, Plaintiff filed a DIB application alleging a disability onset date of June 10, 2015, due to bipolar disorder, manic and depressive episodes, and nerve damage in her back and left leg. She was 38 years old on her alleged onset date, with a 5th grade education and past relevant work experience as an automobile detailer and poultry dresser. Following agency denials of her application, an Administrative Law Judge (ALJ) rendered an unfavorable decision finding that she had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision.

At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. At steps two and three, the ALJ found that although Plaintiff's left lumbar sciatica; degenerative disc disease of the lumbar spine at L4-5; bipolar disorder; borderline intellectual functioning; and obesity were severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light unskilled work with these exceptions:

> she can sit, stand, or walk for 6 hours in an 8-hour workday, alternate between sitting and/or standing at will; occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally work at unprotected heights, around moving mechanical parts, or operate a motor vehicle; occasionally be exposed to dust, odors, fumes, and pulmonary irritants; limited to performing simple, routine and repetitive tasks, and making simple work-related decisions; only occasionally interact with supervisors or coworkers; and never interact with the public.[2]

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, she could not perform her past work because it exceeded her physical residual functional capacity limitations. However, she could perform other work existing in significant numbers in the national economy such as an egg candler, bench assembler, and assembly-press operator.

---

[1] Under 20 C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

[2] ECF No. 8, p. 23.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards.  *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018).  Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal quotation marks and citation omitted).  It must be more than a scintilla, but it need not be a preponderance.  *Id.*  In reviewing an appeal, this Court may not re-weigh the evidence, try the case de novo, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff assigns two errors on appeal:  The ALJ (1) failed to properly evaluate the expert medical opinions of record, and (2) failed to incorporate her full mental limitations into his residual functional capacity determination.  The Commissioner counters that the proper standards were applied, and substantial evidence supports the ALJ's decision.  Given the evidence in this case, the Court finds no basis for reversal or remand.

Plaintiff's first point of error—that the ALJ failed to properly weigh the opinion evidence concerning her mental impairments—is unavailing.  Plaintiff challenges the ALJ's assessment of the expert reports submitted by consulting psychological examiner,

Dr. Sandusky, and State agency consultants, Drs. Tomak and Scallorn.[3] All three experts agreed that Plaintiff's mental impairments would interfere with her ability to work but disagreed on the extent of interference.

Social Security regulations divide medical experts into three general categories: (1) treating sources (primary care physicians); (2) non-treating examining sources (physicians who perform an examination of the claimant); and, (3) non-examining reviewing sources (physicians who review only the claimant's medical record). *See generally* 20 C.F.R. § 404.1502. Generally, the opinion and diagnosis of a treating physician is assigned more weight than an examining or reviewing physician in determining disability. *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015); 40 C.F.R. § 404.1527.[4] However, no treating physician has offered a function-by-function assessment of Plaintiff's mental limitations in this case. The ALJ's analysis of the opinion evidence in this case began with this point:

> Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by a treating doctor. Yet, a review of the record in this case reveals no restrictions recommended by a treating doctor.[5]

---

[3] Although Plaintiff's appeal focuses on her mental limitations, she also asserts that the ALJ failed to consider or recognize the report submitted by the State agency consultant concerning her physical limitations. However, the ALJ's consideration of the consultant's report can be found on page 14 of his decision. ECF No. 8, p. 30.

[4] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017. For claims filed on that date and thereafter, 20 C.F.R. § 404.1520(c) applies, and it provides, *inter alia*, that no specific evidentiary weight is to be given to medical opinions from medical sources.

[5] ECF No. 8, p. 29.

Plaintiff does not deny the lack of a treating source opinion. She maintains that the ALJ should have assigned greater weight to the favorable opinions of the examining and reviewing physicians of record, particularly, Dr. Sandusky.

It is well settled than an ALJ must consider the opinions from non-treating examining physicians. *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(1)). "State agency and psychological consultants and other program physicians are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i). However, while an ALJ may rely on these experts' opinions of a claimant's ability to perform various tasks, an ALJ is not bound by them, so long as he explains the weight assigned. *Beck v. Barnhart*, 205 F. App'x 207, 213–14 (5th Cir. 2006); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Ultimately, an ALJ is free to reject any opinion, in whole or in part, "when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (*superseded by statute on other grounds*).

In the consultative examination in this case, Plaintiff relayed her history of, *inter alia*, inpatient and outpatient psychiatric treatment; anxiety and depression; and, visual and auditory hallucinations to Dr. Sandusky. She stated that she had not undergone any mental health treatment in three months and was not currently taking medication because she was pregnant. In terms of social interaction, Plaintiff reported that she lives with her husband and an older child, but "she keeps to herself most of the time, avoiding others whenever possible." Apart from this, Plaintiff advised that she attends to her personal

5

hygiene, her own healthcare, and "complete[s] routine housekeeping chores slowly, but adequately." She also drives and schedules her own appointments.[6]

On examination, Dr. Sandusky observed that Plaintiff's behavior and psychomotor activity were within normal limits; her speech was clearly articulated; her thought processes were coherent and unremarkable; and her full-scale IQ score was 70 on the WAIS-IV. "Based on her reported psychiatric history as well as currently described symptoms," Dr. Sandusky opined that Plaintiff's "psychological functioning places her at risk in terms of employment," and her IQ score would "most probably disqualify her from employment that requires interaction with [the] public, receiving supervision, or maintaining consistency and pace." Dr. Sandusky also concluded that because she keeps to herself and avoids others, she may have difficulty interacting with others so that her own needs can be met.[7]

As a consulting examiner, Dr. Sandusky's opinion is "not accorded the controlling weight given to treating physicians." *Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008). However, the ALJ gave due consideration to her examination findings and considered the supportability and consistency of her opinion as a whole. *Garcia*, 622 F. App'x at 409. Ultimately, the ALJ assigned it partial weight, explaining that:

> The undersigned acknowledges that Dr. Sandusky's medical opinion of the nature and severity of a claimant's impairment would normally be given lesser weight—although it is well supported and not inconsistent with other substantial evidence in the case record—as she had only a short treatment relationship with the claimant (20 C.F.R. § 404.1527(d) and SSR 96-2P).

---

[6] ECF No. 8, pp. 371-75.

[7] *Id.*

6

> However, Dr. Sandusky did have an examining relationship with the claimant during the consultative examination. The undersigned also notes that Dr. Sandusky's medical report meets the supportability requirement, as it included a review of the claimant's background information, her past medical history, a review of her medical records, and a mental status examination, which documented the claimant's mental limitations. However, Dr. Sandusky apparently relied quite heavily on the subjective report of symptoms and social limitations provided by the claimant and seemed to uncritically accept as true the allegations that she had no other social activity other than seeing her mother once a week and seeing her other children occasionally. In this regard, the undersigned finds that Dr. Sandusky's medical opinion is somewhat consistent with the medical evidence. However, her opinion that the claimant was unable to work due to IQ is refuted by the claimant's years of substantial gainful work activity, but the undersigned does accept some limits due to mental functioning; therefore, her opinion is given "partial" weight.[8]

As a general matter, the exclusive reliance on Plaintiff's self-reports, if true, would be sufficient reason to disregard Dr. Sandusky's opinion. *Garcia*, 622 F. App'x at 410; *See Alejandro v. Barnhart*, 291 F. Supp. 2d 497, n.4 (S.D. Tex. 2003) ("When a medical opinion is premised on self-reporting and is otherwise unsubstantiated by the record, an ALJ may properly disregard said opinion.") (collecting cases). However, the undersigned can find no support for the ALJ's specific assertion that Dr. Sandusky accepted Plaintiff's report concerning her mother and children. Neither is mentioned in the report, and the record reflects that Plaintiff's mother passed away and that she has two kids, the youngest of which lives with her. That said, there is evidence to support the ALJ's overall finding that Plaintiff's social interactions were not as limiting as Dr. Sandusky opined. Her conclusion that Plaintiff "may have difficulty interacting with others so that her own needs can be met" runs counter to other expert opinions and

---

[8] ECF No. 8, pp. 29-30 (internal record citations omitted).

7

Plaintiff's own reports that she attends to her personal needs, healthcare, and drives. It was not unreasonable for the ALJ to weigh Dr. Sandusky's examination notes and findings against her conclusions. *Salmond*, 892 F.3d 812.

As for Dr. Sandusky's opinion that Plaintiff's cognitive impairments would "***disqualify*** her from employment that requires interaction with [the] public, receiving supervision, or maintaining consistency and pace," it is the sole responsibility of the ALJ to interpret the medical evidence to determine a claimant's residual functional capacity for work and to weigh the competing evidence. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Further, the psychiatric review and mental residual functional capacity assessment completed by Dr. Tomak found Dr. Sanduksy's assessment in this regard "to be an overestimate." In Dr. Tomak's opinion, Plaintiff's test results were not disqualifying, but were consistent with borderline intellectual functioning; and, in her view, the best indicator of Plaintiff's cognitive functioning, given her limited education and below average results, was her work history. Although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject any opinion, in whole or in part, when the evidence supports a contrary conclusion. *Kneeland*, 850 F.3d at 760.[9]

Plaintiff does not appear to contest the ALJ's decision to assign Dr. Tomak's assessment significant weight. Rather, she posits that the ALJ's assessment of Dr. Tomak's opinion is also flawed. Specifically, she claims that the ALJ "failed to

---

[9] ECF No. 8, pp. 371-75, 379-97 (emphasis added).

consider" Dr. Tomak's finding that she has moderate limitations in her ability to maintain attention and concentration for extended periods; perform at a consistent pace; accept instructions and respond appropriately to criticisms from supervisors; perform activities within a schedule, maintain regular attendance and be punctual; and, respond appropriately to changes in the work setting.  But a review of the ALJ's decision belies Plaintiff's assertion.

The ALJ credited Dr. Tomak's opinion that the longitudinal data revealed Plaintiff had a fair ability to respond appropriately to basic work setting changes; appeared capable of taking appropriate precautions in hazardous situations and utilizing transportation; and, could organize herself and independently set goals.  He also noted that Dr. Tomak's assessment was consistent with that of State agency consultant, Dr. Scallorn, who opined that Plaintiff had no more than moderate limitations in social functioning and maintaining concentration, persistence and pace.  Contrary to Plaintiff's assertions on appeal, the ALJ did not "fail to consider" or "recognize the existence" of Dr. Scallorn's report.[10]  He explained that he assigned both assessments great weight because they were supported with explanation and consistent with the record as a whole.

In the end, Plaintiff's "argument comes down to the weight the ALJ places on [these reports]—and it is the ALJ's task, not ours, to weigh evidence." *Garcia*, 622 F. App'x at 408–409 (unpublished).  The ALJ properly considered the physician opinions of

---

[10] The ALJ's consideration of Dr. Scallorn's report can be found on page 14 of his opinion. ECF No. 13, p. 6.

record and credited the limitations he found most supported by the record. That is enough to survive judicial review.

Plaintiff's second argument—that the ALJ's residual functional capacity assessment fails to fully account for the limitations arising from her mental impairments—is equally unavailing. In evaluating Plaintiff's mental impairments, the ALJ considered the four broad functional areas for assessing the severity of mental disorders in "paragraph B:" understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and, adapting or managing oneself.[11] Based on the evidence, the ALJ concluded that Plaintiff had no more than moderate limitations in each area.

Plaintiff does not dispute the ALJ's conclusions in this regard, but she maintains that the ALJ's residual functional capacity assessment fails to adequately capture them; specifically, her moderate limitations in the areas of maintaining concentration, persistence and pace, and adapting or managing herself, which "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20

---

[11] In 2017, "paragraph B" was amended to require an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentration, persistence, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt P, App 1, Listing 12.00(A)(2)(b). Although Plaintiff's application was filed prior to the amendment, the ALJ issued his decision in January 2018 and applied the "paragraph B" criteria, as amended, to her disability claim. *See, e.g.,* Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, fn.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00E(4).[12]  However, the ALJ directly addressed both categories of limitation, citing Dr. Tomak's findings in support:

> Consistent with having only ***moderate limitation with regard to concentrating, persisting, or maintaining pace***, Dr. Tomak noted that available data suggested that the claimant was able to carry out simple instructions, follow simple work-like procedures, and make simple work-related decisions. She had a fair ability to sustain attention throughout extended periods of time, perform at a consistent pace, and maintain a regular 40-hour work schedule. Accordingly, the undersigned finds that with regard to concentrating, persisting, or maintaining pace, she has a moderate limitation.
>
> Consistent with having only ***moderate limitation in adapting or managing oneself***, Dr. Tomak noted that available data suggested the the claimant had a fair ability to respond appropriately to basic work setting changes. She appeared capable of taking the appropriate precautions in hazardous situations and utilizing transportation. She also had the ability to organize herself and independently set goals. Accordingly, the undersigned finds that in adapting or managing herself, she has a moderate limitation.[13]

The ALJ accurately summarized Dr. Tomak's findings, and the undersigned notes that Plaintiff does not contend otherwise on appeal.  And, as she herself concedes, the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 4 and 5 of the sequential evaluation.

---

[12] The listings provide the following examples to illustrate the nature of this area of mental functioning:

> Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00E.

[13] ECF No. 8, p. 29 (emphasis added) (internal record citations omitted).

11

In his analysis at step 4, the ALJ explained that he was assigning a limitation to simple, routine and repetitive tasks to account for Plaintiff's moderate limitations in (1) concentration, persistence, and pace, and in (2) adapting and managing herself.  As to the first, courts have long held that a limitation to simple, routine and repetitive tasks is sufficient to accommodate a moderate limitation in concentration, persistence, and pace. *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 904 (5th Cir. 2010) (unpublished); *Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (unpublished).  As to the second, Plaintiff has not explained precisely why these limitations fall short.  Nor has she explained why having limited interaction with her supervisors, coworkers, and the public would not adequately address her limitations in regulating emotions, controlling behavior, and maintaining well-being.  As noted earlier, the ALJ adopted Dr. Tomak's assessment that while Plaintiff was moderately limited in adapting and managing herself, she retained the ability to respond appropriately to basic work setting changes; to take appropriate precautions in hazardous situations and utilizing transportation; and, could organize herself and independently set goals.

As her final argument on this point, Plaintiff contends that the ALJ's residual functional capacity assessment fails to adequately account for her borderline intellectual functioning and IQ results showing deficits in working memory, verbal comprehension, and processing speed.  She also appears to suggest that because the ALJ did not mention borderline intellectual functioning in his hypothetical to the vocational expert, he could not determine its limiting effects on her ability to perform the jobs identified.

However, the ALJ appropriately credited Dr. Tomak's opinion that Plaintiff's work history was the best indicator of her cognitive functioning. "A claimant's intellectual ability is not typically something that improves with time." *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012).[14] Moreover, Plaintiff "points to no authority requiring an ALJ to expressly name the recognized severe impairments in a hypothetical posed to a vocational expert." *Hardman v. Colvin*, 820 F.3d 142, 148–49 (5th Cir. 2016). Rather, an ALJ's residual functional capacity assessment and corresponding hypothetical need only incorporate the limitations recognized by the ALJ. *Bowling*, 36 F.3d at 436. Here, the ALJ presented a hypothetical to the vocational expert that inquired whether an individual with the claimant's residual functional capacity could perform jobs that exist in significant numbers in the national economy. In response, the vocational expert testified that Plaintiff could perform the work identified. Substantial evidence as set forth herein supports this finding. No remand is warranted on this issue.

## Conclusion

In sum, based upon consideration of the evidentiary record as a whole, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to establish disability. The undersigned's review of the record compels a finding

---

[14] *Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012) ("We agree with the majority of our sister Circuits that it is reasonable to presume, in the absence of evidence indicating otherwise, that claimants will experience a fairly constant IQ throughout their lives."); *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) ("[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning."); and *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986) (adopting presumption that low I.Q. existed prior to first I.Q. test).

that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED on February 20, 2020.

s/ Linda R. Anderson  
UNITED STATES MAGISTRATE JUDGE